RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0146P (6th Cir.)
File Name: 02a0146p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GERARD COTTER,
　　　　*Plaintiff-Appellant,*

　　　　*v.*

AJILON SERVICES, INC.,
　　　　*Defendant-Appellee.*

No. 00-2041

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-72494—Avern Cohn, Senior District Judge.

Argued and Submitted: March 18, 2002

Decided and Filed: April 25, 2002

Before: SILER and GILMAN, Circuit Judges; HEYBURN,
Chief District Judge.*

---

## COUNSEL

**ARGUED:** Virginia F. Metz, VERCRUYSSE, METZ &
MURRAY, Bingham Farms, Michigan, for Appellee.
**ON BRIEF:** Christopher E. Mengel, BERKLEY, MENGEL

---

* The Honorable John G. Heyburn II, Chief United States District
Judge for the Western District of Kentucky, sitting by designation.

1

& VINING, Detroit, Michigan, for Appellant. Virginia F. Metz, VERCRUYSSE, METZ & MURRAY, Bingham Farms, Michigan, for Appellee.

---

## OPINION

---

HEYBURN, Chief District Judge.  Plaintiff-appellant Gerard Cotter filed claims against his former employer, Ajilon Services, Inc. ("Ajilon"), under the federal Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), Mich. Comp. Laws §§ 37.1101 *et seq.*, which substantially resembles the ADA.  The district court, finding that Cotter failed to provide evidence sufficient to raise a genuine issue of material fact that he either was actually disabled or regarded as disabled within the meaning of either law, granted Ajilon summary judgment on both claims.  For the reasons stated in this Memorandum Opinion, this Court AFFIRMS that decision.

### I.

Cotter began working for Ajilon in September 1993.  Ajilon hires technically-skilled employees and places them with client employers.  As with most "temp services," the client employer pays Ajilon, and Ajilon pays the employee; however, Ajilon pays its employees whether they are placed with and working for a client – thus generating revenues for Ajilon – or not.  Ajilon placed Cotter with Blue Cross/Blue Shield.  Cotter worked full-time, with occasional overtime.

In the autumn of 1993, a doctor diagnosed Cotter with ulcerative colitis.  Ulcerative colitis (hereinafter "colitis") is an intestinal ailment which has no known cure but may be controlled by medication, a proper diet, exercise, and adequate rest.  The doctor recommended to Cotter that he limit overtime work.  Cotter notified his supervisor, Charles Bachleda, of the recommendation, and Bachleda took him off

to a termination status[?] P.S. – Back Case." *Id*. at 704. The Court reversed summary judgment, concluding that a reasonable jury might find that the employer's true motive for terminating Ross had been discriminatory.

We agree with the *Ross* panel's observation of the steep challenge a plaintiff faces in proving that his employer regarded him as substantially limited in working.  However, the facts in *Ross* sharply contrast with those in this case.  In *Ross*, there was substantial evidence that the plaintiff's medical status significantly influenced his employer's decision to terminate him; here, the evidence is insubstantial, and certainly far less compelling than in *Ross*.[3]  The record indicates that Ajilon attempted to market Cotter to a client in late February 1997, a fact which mitigates against a finding that Ajilon regarded him as substantially limited in working.  Further, Ajilon offered evidence that it let thirty-one other employees go between January 1996 and December 1997 because it failed to place them with client employers.  Thus, Cotter has no evidence that Ajilon discriminated by treating him worse than it treated other employees.

Ultimately, Cotter has not offered sufficient evidence to support a conclusion by a rational trier of fact that he was disabled or regarded as disabled within the meaning of the ADA and PWDCRA.  Accordingly, we AFFIRM the judgment of the district court.

---

[3]Besides the "Back Case" memo, Ross introduced evidence that, after his fifth back injury, his supervisors suggested that he find work elsewhere, and that, after Ross declined, they placed him on probation, gave him a sharply negative job performance review, and assigned him significantly higher sales quotas. *Id*. at 703-04.

becomes a question of [the employer's] intent," the panel observed that the question of an employer's motive is one "rarely susceptible to resolution at the summary judgment stage." *Id.* at 706.

*Ross* recognized the difficulty a plaintiff faces in proving that his employer regarded him as substantially limited in working:

> Proving that an employee is regarded as disabled in the major life activity of working takes a plaintiff to the farthest reaches of the ADA. It is a question embedded almost entirely in the employer's subjective state of mind. Thus, proving the case becomes extraordinarily difficult. Not only must a plaintiff demonstrate that an employer thought he was disabled, he must also show that the employer thought that his disability would prevent him from performing a broad class of jobs. As it is safe to assume employers do not regularly consider the panoply of other jobs their employees could perform, and certainly do not often create direct evidence of such considerations, the plaintiff's task becomes even more difficult. Yet the drafters of the ADA and its subsequent interpretive regulations clearly intended that plaintiffs who are mistakenly regarded as being unable to work have a cause of action under the statute. Whether Ross is such a plaintiff lies in the question of whether Campbell Soup Co. regarded him as substantially limited from performing a broad class of jobs. In cases such as this one, where there is substantial evidence that an individual's medical status played a significant role in an employer's decision to fire that individual, combined with evidence that the employer concocted a pretextual justification for that firing, the need for more extensive factual inquiry into whether the employer engaged in unlawful discrimination is especially acute.

*Id.* at 709. Among the substantial evidence referred to was an interoffice managerial memo in which one of Ross's supervisors asked, "When can we bring this problem person

overtime at Blue Cross. In August 1994, Cotter submitted a letter of resignation in order to accept a better-paying job, but Ajilon offered to top its competitor's offer and Cotter chose to stay.

In November 1994, Bachleda told Cotter to take on continuous overtime work with the Chrysler Corporation, and threatened that Ajilon would terminate him if he did not accept the additional work. Cotter tried to go above Bachleda in Ajilon's chain of command for permission to refuse the overtime. Unsuccessful, Cotter started working sixteen to twenty hours overtime with Chrysler.

In April 1995, Cotter collapsed and was hospitalized due to a flare-up of his colitis. He took leave, with full pay. In May, Bachleda visited him at home and told Cotter that he had lost the Blue Cross position, and that if he lost another position, Ajilon would terminate him. Bachleda admonished Cotter not to return to work until he could do so without medical restrictions, and demanded that he inform Ajilon in advance of any serious medical condition.

Cotter returned from leave in June 1995, under medical advice that he take a walk of up to fifteen minutes' duration every two hours. Cotter interviewed with two Ajilon clients for a new placement, and chose to work at Ford Motor Company. In the spring of 1996, Cotter asked to be reassigned. He also asked Bachleda to let him take time off three days each of two weeks to attend a stress management clinic. When Bachleda refused these requests, Cotter's psychiatrist recommended that Cotter take two weeks of sick leave, which he did, though he did not attend the clinic. Cotter suffered another flare-up during his leave, and extended his leave until November 1996. During this time, in early September, Ajilon contacted Cotter with an offer to work for a client in Jacksonville, Florida, which Cotter rejected. While on leave, Cotter received disability pay from Ajilon.

In November, upon clearance from a physician to work part-time, Cotter put in a request to Bachleda, who told him

no part-time work was available. In mid-December, Cotter said that he was fit for full-time work, and Bachleda advised him that no work would be available until after the holidays.

On February 3, 1997, Ajilon returned Cotter to full pay. Bachleda promised to try to find work for Cotter, but told him not to come into the office looking for work. On February 28, Ajilon terminated Cotter's employment, effective March 14. The stated reason in Ajilon's records is "lack of work."

Ajilon claims that it usually keeps an employee "on the bench" – paid at the regular salary, though not working – for a maximum of four weeks, but that, in spite of reasonable efforts over six weeks to place Cotter with a client employer, it was unable to do so, and consequently had to terminate him. Cotter claims that he is disabled; alternatively, he argues that Ajilon mistakenly regarded him as substantially limited in the ability to work, and consequently failed to market him aggressively to client employers.

## II.

This Court reviews a district court's grant of summary judgment de novo, and affirms such a judgment only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. The Court should believe the evidence presented by the nonmovant, and draw all justifiable inferences in his favor. *Plant* v. *Morton International*, *Inc.*, 212 F.3d 929, 933-34 (6th Cir. 2000).

## III.

The ADA prohibits covered entities from discriminating against qualified individuals with a disability. The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In turn, the ADA defines "disability" as follows:

allege they are [regarded as] unable to work in a broad class of jobs." *Id*. at 491; 29 C.F.R. § 1630.2(j)(3)(i). An employer does not necessarily regard an employee as disabled "simply by finding the employee to be incapable of satisfying the singular demands of a particular job." *Kocsis* v. *Multi-Care Management*, *Inc*., 97 F.3d 876, 885 (6th Cir. 1996) (quotation marks and citation omitted). *See also Chiles*, *supra*, 606 N.W.2d at 407-08 (under PWDCRA, "the inability to perform a *particular* job does not constitute a substantial limitation. Instead, the impairment must significantly restrict an individual's ability to perform at least a wide range of jobs.") (emphasis in original) (citations omitted).

The district court dismissed Cotter's regarded-as claim, stating that he had not offered sufficient evidence to raise a genuine issue of material fact as to whether Ajilon believed colitis significantly restricted him from performing a class or broad range of jobs. Attempting to establish that Ajilon's defense – that no client employer chose Cotter, despite Ajilon's reasonable, good-faith effort to place him – is a pretext, Cotter claims that Bachleda refused him reasonable accommodations and threatened that Ajilon would dismiss him if he ever went on disability leave again. Cotter also offers Ajilon records which indicate that, while Cotter was "on the bench" in early 1997, Ajilon received over three hundred requests from clients for employee placement, and placed over one hundred employees during this time.

Cotter's argument centers around our recent decision in *Ross* v. *Campbell Soup Co*., 237 F.3d 701 (6th Cir. 2001), in which we held that it is generally a jury question whether a perceived class of jobs is substantial enough to qualify as a "broad class" under *Sutton*. In *Ross*, Campbell Soup Company terminated a sales employee who frequently experienced severe back pain. The plaintiff alleged that his employer had mistakenly regarded him as substantially limited in the ability to work. The employer countered that it had discharged Ross because he had exaggerated his condition and misused his sick leave. Noting that, under the ADA's regarded-as prong, "membership in the protected class

inability to work overtime is not a substantial limitation on the ability to work. *See, e.g., Linser* v. *Ohio Dept. of Mental Health*, No. 99-3887, 2000 U.S. App. LEXIS 25644, at *8 (6th Cir. Oct. 6, 2000) (inability to work more than forty hours per week is not a substantial limitation on the ability to work); *Vonderheide* v. *United States Post Office*, No. 97-5508, 1998 U.S. App. LEXIS 16885, at *8 (6th Cir. July 16, 1998) (same); *Rutlin* v. *Prime Succession, Inc.*, 75 F. Supp. 2d 735, 738 (W.D. Mich. 1999) (same); *Muthler* v. *Ann Arbor Machine, Inc.*, 18 F. Supp. 2d 722, 728-29 (E.D. Mich. 1998) (same). *Also see Doren v. Battle Creek Health Sys.*, 187 F.3d 595, 599 (6th Cir. 1999).

Quite simply, the evidence precludes a finding that Cotter's physical impairment substantially limits a major life activity.

### B.

Cotter also appeals the district court's conclusion that he did not offer sufficient evidence to raise a genuine issue of material fact as to whether Ajilon regarded him as disabled. *See* 42 U.S.C. § 12102(2)(C). As the Supreme Court observed in *Sutton*, *supra*:

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual – it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

527 U.S. at 489. When, as here, "the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs

---

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).[1] Equal Employment Opportunity Commission ("EEOC") guidelines define the phrase "substantially limits" as follows:

(i) Unable to perform a major life activity that the average person in the general population can perform; or
(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). These guidelines advise that a court, in determining whether an individual is substantially limited in a major life activity, should consider the following factors:

(i) The nature and severity of the impairment;
(ii) The duration or expected duration of the impairment; and
(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

---

[1]Cotter does not allege under 42 U.S.C. § 12102(2)(B) that Ajilon discriminated against him because he has a record of an impairment.

Michigan's Persons with Disabilities Civil Rights Act[2] substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim. *Cassidy* v. *Detroit Edison Co.*, 138 F.3d 629, 634 n.3 (6th Cir. 1998); *Chiles* v. *Machine Shop, Inc.*, 606 N.W.2d 398, 405 (Mich. Ct. App. 1999).

To state a claim under the ADA, a plaintiff must establish that: "1) he is an individual with a disability; 2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and 3) he was discharged solely by reason of his handicap." *Monette* v. *Electronic Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996). The issue before us is whether Cotter is disabled within the meaning of the statute.

A.

We must make an individualized inquiry into whether a plaintiff is disabled. *See Sutton* v. *United Air Lines, Inc.*, 527 U.S. 471, 483 (1999). Thus, though colitis might not be a disability for everyone who has it, it might be a disability for Cotter. Moreover, because we must take into account "measures that mitigate the individual's impairment," *id*. at 475, the colitis must be viewed in its medicated – and thus substantially controlled – state. In determining whether Cotter's colitis is disabling, we consider three factors: 1) whether his colitis constitutes a physical impairment; 2) if so, whether any life activity which the colitis purportedly curtails constitutes a major life activity under the ADA; and 3) if so, whether the colitis substantially limits that major life activity. *See Bragdon* v. *Abbott*, 524 U.S. 624, 631 (1998).

---

[2]MICH. COMP. LAWS § 37.1203 provides specifically: "An employment agency shall not fail or refuse to refer for employment, or otherwise discriminate against an individual because of a disability or classify or refer for employment an individual on the basis of a disability that is unrelated to the individual's ability to perform the duties of a particular job or position."

In his complaint, Cotter alleged, without elaborating, that his colitis "substantially limits major life activities." In an affidavit filed after Ajilon's motion for summary judgment, Cotter claimed that his colitis restricts his ability to perform manual tasks such as lifting, bending, standing and carrying things. Apart from this perfunctory statement, however, Cotter offered no evidence from which a reasonable jury could infer that his digestive ailment substantially limits these major life activities. As we have held, "[a] single conclusory statement about an alleged substantial limitation is not enough to avoid summary judgment sought by the employer." *Anderson* v. *Inland Paperboard & Packaging, Inc.*, No. 99-6608, 2001 U.S. App. LEXIS 7118, at *12 (6th Cir. Apr. 4, 2001). *Cf. Penny* v. *United Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997) (plaintiff's bare allegation of a walking impairment did not suffice to prove that the impairment rose to the level of a disability).

Cotter also cited his doctor's order that he "take frequent breaks to avoid stress [and] avoid prolonged overtime," a recitation which seems aimed at demonstrating that Cotter is substantially limited in the major life activity of working. The district court found that Cotter is not substantially limited in his ability to work because he found a similar job after termination and has worked continuously without taking time off because of his colitis. Such a finding is entirely consistent with the EEOC guidelines on the subject:

With respect to the major life activity of working –

The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i). The court below also found that the physician's restrictions on working overtime did not create a disability under the ADA. We have held that an