Kay L. **RODGERS**, Plaintiff,

v.

**NORFOLK SOUTHERN CORPORATION,**
Defendant.

No. 2:01–CV–617.

United States District Court,
S.D. Ohio,
Eastern Division.

Sept. 3, 2003.

Nicholas E. Kennedy, Laren E. Knoll, Dennis M. McGuire, Kennedy & Knoll, Columbus, OH, for Kay L. Rogers, Plaintiff.

John B. Lewis, Gregory Valentin Mersol, Michelle Pierce Stronczer, Baker & Hostetler LLP, Cleveland, OH, for Norfolk Southern Corporation, Defendant.

## OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment

(Doc. # 25). For the reasons set forth below, the Defendant's motion is granted.

## I.

Plaintiff, Kay L. Rodgers ["Plaintiff"], brings this action against her employer, Norfolk Southern Corporation ["Norfolk"] alleging that Norfolk discriminated against her and failed to reasonably accommodate her alleged disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112, et seq., as well as Ohio law. The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and § 1367.

Conrail, predecessor in interest to Norfolk, hired Plaintiff as an Engineer Trainee in 1994. (Amended Complaint at 3). In 1995, Plaintiff became a locomotive engineer and was assigned to the Conrail terminal in Crestline, Ohio. (Defendant's Motion for Summary Judgment at 2). In this capacity, Plaintiff was responsible for intrastate train runs, as well as interstate runs between Ohio and Pennsylvania.[1] (Amend. Compl. at ¶ 4). Immediately after Norfolk took over Conrail's operations on June 1, 1999, Plaintiff, as a Norfolk employee, was assigned to the Mansfield, Ohio terminal. (Rodgers Depo. at 54–55). Plaintiff continued to work as a locomotive engineer and was classified as an "extra board" engineer pursuant to Norfolk's collective bargaining agreement with the Brotherhood Of Locomotive Engineers ("Union"). (Id. at 23, 90–91). Rather than holding "regular" positions, Norfolk's "extra board" engineers are "on call" and are rotated to cover for regular engineers absent due to illness or vacation. (Id. at 55). On November 4, 1999, Plaintiff was diagnosed with Hepatitis C. (Id. at 48). Within a week of this diagnosis, Plaintiff commenced a medical leave from work.

(Amended Complaint at ¶ 5). Plaintiff's last day of actual work was November 9, 1999. (Rodgers Depo. at 26–27). On January 17, 2000, Plaintiff's treating physician, Dr. Kelly L. Tracey, authored a letter outlining Plaintiff's medical condition. (Exhibit K attached to Rodgers Depo). Dr. Tracey's letter stated that Hepatitis C patients experience episodes of fatigue. (Id.) In view of these symptoms, Dr. Tracey noted that Rodgers needs "to rest between her eight hour 'runs' for periods of eight to twelve hours." (Id.). Dr. Tracey also opined that Rodgers might experience "brief episodes of fatigue and malaise that could prevent her from working from time to time," and that even with treatment, "Hepatitis C waxes and wanes and could cause some problems with fatigue." (Id.). In addition to Hepatitis C, Dr. Tracey's letter diagnosed Plaintiff as suffering from rheumatoid arthritis. (Id.).

In late January 2000, Plaintiff gave John Gibson, her Norfolk supervisor, Dr. Kelly's letter of January 17, 2000 regarding her medical condition. Plaintiff also provided Gibson with a document from Dr. Kelly dated January 28, 2000 which released her to return to work as of February 29, 2000. (Amended Complaint at ¶ 7; Rodgers Depo. at 111, Exhibit T). In a second letter from Dr. Kelly dated February 9, 2000, the doctor stated that "Kay would like to work, but she should be limited to one trip with some time in between each trip. She [should] also be allowed some time off when she is not feeling well." (Exhibit L attached to Rodgers Depo.). Dr. Kelly's letter did not recommend nor restrict the number of hours Rodgers could work as a locomotive engineer. Rodgers contends that Dr. Kelly faxed this letter to Norfolk as part of a 13–page

---

1. A "run" is the assigned route between two points on the railroad. (Faulhaber Declaration at ¶ 7). During a run, the locomotive engineer operates the train engine and is responsible for the safe and efficient movement of the train. (Id.).

transmission. (*Plaintiff's Memo Contra at 4*).

On February 11, 2000, W.C. Faulhaber, Division Road Foreman informed Plaintiff, by letter, that Norfolk was unable to accommodate her work restrictions. (Exhibit M, *Id.*). Faulhaber instructed Plaintiff to provide updated medical information and a work release at such time as the "doctor releases you to full duty without restrictions." (*Id.*). On May 25, 2000, R.A. Bartle, the Norfolk Division Superintendent, sent a letter to Plaintiff informing her that the company had not received updated information from her treating physician as requested by Faulhaber in his February 11, 2000 letter to Plaintiff.[2] (Exhibit O attached to *Rodgers Depo*). C.L. McAnany, Jr., the Division Foreman, sent a similar letter to Plaintiff on June 7, 2001. (Exhibit Q attached to *Rodgers Depo*). Unlike Faulhaber's previous letter, McAnany's letter instructed Rodgers to obtain a work release "indicating recommended work restrictions and/or limitations that may need to be made." (*Id.*)

The parties do not dispute that employees in Plaintiff's job classification, "extra board" engineers, are required to conduct runs that regularly exceed eight hours. Plaintiffs' runs for Norfolk ranged from a shortest trip of 4 hours to a trip of 24 hours. (*Rodgers Depo* at 65). The parties also agree that, under the terms of the collective bargaining agreement between Norfolk and the Union, Rodgers lacked sufficient seniority to transfer to a regular locomotive engineer position with a less restrictive schedule. (*Rodgers Depo* at 55–56). Norfolk contends that since Plaintiffs' medical condition has not changed since Dr. Tracey's letter of January 17, 2000, it was justified in placing Plaintiff on the status of "medical hold." Plaintiff contends that Norfolk refused to reasonably accommodate her disability in violation of the ADA and the state anti-discrimination statute, O.R.C. § 4112.01, *et seq.*

## II.

The procedure for considering whether summary judgment is appropriate, is found in Fed.R.Civ.P. 56(c); this section provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also, Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby*, *Celotex*, and *Matsushita* have effected "a decided change in summary

---

**2.** The parties dispute whether Plaintiff personally, or through her physician, complied with Defendant's repeated requests for further information regarding her medical condition.

judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989). The court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.' " *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. 2505). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely " 'show that there is some metaphysical doubt as to the material facts.' " *Id.* (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

## III.

As an initial matter, the Court notes that Plaintiff has satisfied the administrative pre-requisites to suit under the ADA.[3] The ADA forbids a covered entity from discriminating against a "qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a).

Ohio courts generally look to regulations and cases under the ADA for guidance in interpreting the state's handicap discrimination law, R.C. § 4112.02. *Plant v. Morton Int'l Inc.*, 212 F.3d 929 (6th Cir.2000); *Columbus Civ. Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, 573, 697 N.E.2d 204, *reconsideration denied* (1998), 83 Ohio St.3d 1453, 700 N.E.2d 334. Accordingly, this Court conflates its review of Plaintiff's federal and state law discrimination claims.

Whether advancing a theory of discrimination under the ADA using direct or indirect evidence, the Plaintiff bears the initial burden of establishing a *prima facie* case.[4] In this regard, Plaintiff must show: (1) that she is disabled; (2) that she is otherwise qualified for the position, with or without reasonable accommodations; (3) that she suffered an adverse employment decision; (4) that the employer knew or had reason to know of the plaintiff's disability; and (5) that the position remained open while the employer sought other applicants or the disabled employee was replaced. *Monette*, 90 F.3d at 1186–87.

The ADA's general rule prohibiting employment discrimination applies to individ-

---

**3.** The record confirms that Plaintiff filed a charge with the Equal Employment Opportunity Commission ["EEOC"] and initiated her civil action within ninety days of receipt of a right to sue letter from the EEOC. 42 U.S.C. § 12117(a).

**4.** *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), sets forth the well-known balance-shifting test used for indirect evidence of discrimination. Where the Plaintiff presents direct evidence of discrimination, and the employee is otherwise qualified for the position, the burden-shifting scheme set forth in *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1186 (6th Cir.1996), is employed.

uals who satisfy the statutory definition of an individual with a disability. 42 U.S.C. § 12112(a). Accordingly, the first inquiry under an ADA claim is whether the plaintiff is disabled within the meaning of the statute. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activity of such individual; (B) a record of such an impairment, or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C). The Court first considers whether Plaintiff satisfies one of these criteria.

### A. Disability Under Subsection A of 42 U.S.C. § 12102(2)

■ Under the ADA, a Plaintiff must first establish that he or she has a physical or mental impairment. 42 U.S.C. § 12102(2)(A). The EEOC regulations define "physical impairment" to include, *inter alia*, disorders affecting the hemic and lymphatic system. 45 C.F.R. 84.3(j)(2)(i). "Merely having an impairment does not make one disabled for purposes of the ADA." *Toyota Motor Manufacturing, Kentucky v. Williams*, 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Because the ADA also requires evaluations to be made "with respect to an individual," the determination of disabled status has been termed an "individualized inquiry." *Bragdon v. Abbott*, 524 U.S. 624, 641–42, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). An individualized inquiry disfavors presumptions that any particular impairment is disabling.

■ Second, ADA's statutory definition requires that an individual's impairment substantially limit one or more major life activity. While the ADA does not define the term "major life activity," the EEOC has promulgated regulations defining the term to include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breath-

ing, learning, and working." 29 C.F.R. 1630.2(g)-(j). The EEOC regulation defining major life activities is "illustrative, not exhaustive." *Bragdon*, 524 U.S. at 639, 118 S.Ct. 2196.

Third, the ADA requires that the physical or mental condition affecting a major life activity be "substantially limiting." 42 U.S.C. § 12102(2)(A). The EEOC defines "substantially limiting as, '[u]nable to perform a major life activity that the average person in the general population can perform'" or "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition manner or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. 1630.2(j).

■ The regulation also identifies factors to consider in determining whether an individual is substantially limited in a major life activity: "the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." 29 C.F.R. 1630.2(j)(2)(i)-(iii). Where, as in the present case, the plaintiff identifies "working" as the affected major life activity, he or she must further "allege that they are unable to work in a broad class of jobs." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450(1999). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. 1630.2(j)(3)(i). The regulations identify other factors as probative of whether an individual is substantially limited in the major life activity of working: the geographic area to which the individual has reasonable access and "the number and

type of jobs utilizing similar training, knowledge, skills or abilities, within the geographical area, from which the individual is also disqualified." 29 C.F.R. 1630.2(j)(3)(ii)(A), (B).

■ In this case, Plaintiff claims that she is disabled within the meaning of the ADA. Plaintiff has presented evidence that she suffers from Hepatitis C, a disorder affecting the hemic system. This disorder is a physical impairment as defined by the regulations. 45 C.F.R. 84.3(j)(2)(i). Accordingly, the Court finds that Plaintiff has a physical impairment for purposes of the ADA.

■ Defendant argues that, despite Plaintiff's physical impairment, she is not substantially limited in the major life activity of working. Defendant contends that by Plaintiff's own admission, her impairment imposes "very minimal" restrictions on her activities. (*Defendant's Motion for Summary Judgment* at 11). Further, Defendant contends that under the standard adopted by the Supreme Court in *Toyota Motor Manufacturing, Kentucky v. Williams,* 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), Plaintiff has failed to demonstrate that she is prevented or severely restricted "in doing activities that are of central importance to most people's daily lives." The plaintiff in *Toyota* claimed that she was substantially limited in the major life activity of performing manual tasks. In the present case, Plaintiff argues that she is substantially limited in the major life activity of working, not performing manual tasks. Therefore, the *Toyota* analysis regarding the major life activity of performing manual tasks is not helpful.

In support of its position that Plaintiff is not substantially limited by Hepatitis C, Defendant relies in part on a letter authored by the Union describing the medical restrictions Plaintiff's physician imposed on her *work* activities and seeking restoration of Plaintiff to the position of locomotive engineer. (Exhibit N attached to *Rodgers Depo.*). In particular, the letter states that "the Brotherhood Of Locomotive Engineers, feel[s] that the restrictions, both stated and advised by [Plaintiff's] personal physician are at best very minimal and … Norfolk & Southern Corp. should and could have accommodated [Plaintiff] with these restrictions and [should] allow her to return to active duty immediately." (*Id.*). The letter does not address the nature, severity, permanence, and actual or expected duration of Plaintiff's alleged limitations.

Plaintiff testified on deposition as to how Hepatitis C has affected her. Plaintiff testified that she is able to perform various non-work related activities: she cleans, does housework, cooks, washes, drives herself to work, performs personal grooming and goes to the supermarket. (*Rodgers Depo.* at 139–140). Although the Defendant urges the Court to consider these abilities, this testimony does not inform the Court of what limitations, if any, Hepatitis C imposes on Plaintiff's major life activity of *working*, the claim at issue here. With respect to work, Plaintiff testified on deposition that, in her current job as a bartender, she serves drinks, moves boxes, stocks shelves, lifts single cases of beer, and can stand on her feet for eight hours. (*Id.*).

Notably, Plaintiff did not list or describe work related activities she is *unable* to perform or to which she is substantially limited in the condition, manner or duration of performance as compared to the average person. Rather, Plaintiff cites only Dr. Tracey's restrictions in support of her alleged limitations, *i.e.*, that she is required to rest eight to twelve hours between runs and may be unable to work from time to time when she is symptomatic. With respect to any activity she is

*unable* to perform, Plaintiff simply states that she is unable to garden or swim. (*Id.* at 140). Since these activities are not work-related, they do not further Plaintiff's claim.

Furthermore, Plaintiff testified that she believes herself capable of working more than eight hours at a time. (*Rodgers Depo.* at 117). Plaintiff admits that she is also qualified to perform Defendant's conductor position. (*Rodgers Depo.* at 22, 23, 88). Plaintiff does, however, view the physical requirements of the conductor position as more strenuous than those required at her previous position as a locomotive engineer. Plaintiff never attempted to transfer to Defendant's conductor position because of its physical requirements and because it paid less than the locomotive engineer position. (*Id.*).

Plaintiff does not offer evidence of how her physical impairment affects "the number and type of jobs utilizing similar training, knowledge, skills or abilities, within the geographical area, from which the individual is also disqualified." Further, Plaintiff offers no evidence regarding a broad class of jobs from which she is excluded based on Hepatitis C related work limitations. Plaintiff simply relies on Dr. Tracey's letter of January 17, 2000 that Plaintiff's symptoms would require her to rest between eight hour runs and that Plaintiff could experience fatigue and malaise that might prevent her from working from time to time. (Exhibit K attached to *Rodgers Depo.*).

In sum, there is no evidence in the record that Plaintiff's Hepatitis C disqualifies her from a broad class of jobs utilizing similar training, knowledge, skills or abilities within the geographical area of Defendant's Mansfield, Ohio operation. Accordingly, the Court cannot conclude that Plaintiff's Hepatitis C substantially limits her in the major life activity of working. The Court's finding, however, does not end the inquiry into whether Plaintiff is a member of ADA's protected class.

**B. Disability Under Subsection C of 42 U.S.C. § 12101(2)**

■ As stated *supra*, an individual may be "disabled" for purposes of the ADA if the individual "is regarded as having such an impairment." 42 U.S.C. § 12102(2)(C). An individual satisfies the "regarded as" prong by establishing that "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton,* 527 U.S. at 489, 119 S.Ct. 2139; *Ross v. Campbell Soup Company,* 237 F.3d 701, 706 (6th Cir.2001). Thus, the ADA protects those individuals "regarded as having a disability if an employer ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties." *Ross,* 237 F.3d at 706.

In the present case, Defendant notified Plaintiff on February 11, 2000 that it was unable to accommodate the work restrictions identified by Plaintiff's doctor in January 2000. (Exhibit M attached to *Rodgers Depo.*). The letter also advised Plaintiff that she should contact Defendant when she was released to full duty. Plaintiff contends that this letter shows that the Defendant regarded her as disabled because it mistakenly believed that Plaintiff's impairment substantially limited her ability to perform a broad class of jobs.

With respect to the "regarded as" prong of the ADA disability definition, the Supreme Court has held that when the "major life activity under consideration is that

of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiff[ ] allege [she] is [regarded as] unable to work in a broad class of jobs." *Sutton*, 527 U.S. at 491, 119 S.Ct. 2139. The Sixth Circuit recognizes that proof of this assertion presents a "steep challenge" for a Plaintiff. *Cotter v. Ajilon Services, Inc.*, 287 F.3d 593, 600 (6th Cir.2002). In *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir.2001), the court stated:

> [W]hen [an] individual seeks to proceed under a "regarded as" theory, we must look to the state of mind of the employer against whom he makes a claim. Under the "regarded as" prong of the ADA, membership in the protected class becomes a question of intent. And ... that question—*i.e.*, the employer's motive—is one rarely susceptible to resolution at the summary judgment stage.

The court went on to explain:

> Thus, proving the case becomes extraordinarily difficult. Not only must a plaintiff demonstrate that an employer thought he was disabled, he must also show that the employer thought his disability would prevent him from performing a broad class of jobs. As it is safe to assume employers do not regularly consider the panoply of other jobs their employees could perform, and certainly do not often create direct evidence of such considerations, the plaintiff's task becomes even more difficult. Yet the drafters of the ADA and its subsequent interpretive regulations clearly intended that plaintiffs who are mistakenly regarded as being unable to work have a cause of action under the statute.... In cases such as this one, where there is substantial evidence that an individual's medical status played a significant role in an employer's decision to fire that individual, combined with evidence that the employer concocted a pretextual justification for that firing, the need for more extensive factual inquiry into

whether the employer engaged in unlawful discrimination is especially acute.... The resolution of [the] issue is properly left to the jury.

*Id.* at 709.

In *Ross*, the Defendant terminated an employee who had frequently experienced severe back pain. The Plaintiff claimed that the Defendant mistakenly regarded him as substantially limited in the ability to work. The employer asserted that Plaintiff was discharged for exaggerating his condition and misusing his sick leave. The Sixth Circuit reversed the district court's grant of summary judgment, holding that there was evidence to create a genuine issue of material fact as to whether Plaintiff had been regarded as disabled. In particular, the court focused on a memo in which one of Plaintiff's supervisors asked "When can we bring this problem person to a termination status[?] P.S.— Back case." *Id.* at 704. The Sixth Circuit reasoned that this memo, together with other evidence, created a factual issue as to whether Defendant's decision to terminate Plaintiff was influenced by his medical status.

In contrast to *Ross* is the decision in *Cotter v. Ajilon Services, Inc.*, 287 F.3d 593 (6th Cir.2002). Plaintiff in *Cotter* worked for Blue Cross/Blue Shield Insurance, after having been placed there by the Defendant, a temporary employment placement service. Plaintiff was diagnosed with ulcerative colitis, an intestinal ailment with no known cure that may be controlled by medication, proper diet, exercise and rest. Plaintiff's doctor recommended that Plaintiff limit overtime work at Blue Cross/Blue Shield. Plaintiff did so, but later that year, the Defendant placement service told Plaintiff to take on continuous overtime work with Chrysler Corporation and threatened termination if Plaintiff refused the work. Plaintiff began

work at Chrysler and experienced problems with his colitis. Plaintiff then took full medical leave. While on leave, the Defendant advised Plaintiff that he had lost the position with Blue Cross/Blue Shield. Defendant advised Plaintiff not to return to work until he could do so without any medical restrictions. Later, Plaintiff presented himself to Defendant for work under medical advice that he walk up to fifteen minutes every two hours. Plaintiff suffered another flare-up, however, and took extended leave. Approximately four months later, Plaintiff's doctor advised that he could work part-time. The Defendant told Plaintiff that no work was available. A few months later, Defendant terminated Plaintiff's employment on the basis of no available work. Plaintiff brought suit under the ADA claiming that he was disabled, or that the Defendant mistakenly regarded him as substantially limited in the ability to work.

The district court granted summary judgment for the Defendant on Plaintiff's ADA claim and the Sixth Circuit affirmed. With respect to the "regarded as" aspect of Plaintiff's claim, the court found that Plaintiff failed to offer sufficient evidence to raise a genuine issue of material fact as to whether the Defendant believed that Plaintiff's colitis significantly restricted him from performing a class or broad range of jobs. The court found the facts in *Cotter* in sharp contrast to those in *Ross, supra.*

> In *Ross*, there was substantial evidence that the plaintiff's medical status significantly influenced his employer's decision to terminate him; here, the evidence is insubstantial, and certainly far less compelling ... The record indicates that Ajilon attempted to market Cotter to a client in late February 1997, a fact which mitigates against a finding that Ajilon regarded him as substantially limited in working. Further Ajilon offered evidence that it let thirty-one other em-

ployees go between January 1996 and December 1997 because it failed to place them with client employers.... Ultimately, Cotter has not offered sufficient evidence to support a conclusion by a rational trier of fact that he was disabled or regarded as disabled with the meaning of the ADA ....

*Cotter,* 287 F.3d at 600–01.

■ In the case at bar, Plaintiff Rodgers was terminated from employment because the Defendant was unable to accommodate the Plaintiff's medical restriction in the position of extra board engineer. Plaintiff was directed to advise Defendant when she was able to return to work without restrictions. (Exhibit M attached to *Rodgers Deposition*). It is undisputed that there are two general groups of locomotive engineers at the Defendant Norfolk Southern Railway, "extra board" and "regular assignment." A regular assignment engineer could work in a position on the rail yard, on the road or performing local or industrial switching. (*Faulhaber Declaration* at ¶ 6 attached to *Defendant's Motion for Summary Judgment*). Such jobs would have allowed Plaintiff to rest between shifts as her doctor recommended. It is undisputed, however, that Plaintiff did not have enough seniority under the Collective Bargaining Agreement to hold the position of a regular assignment engineer. (*Rodgers Depo.* at 23, 90–91). In *U.S. Airways, Inc. v. Barnett,* 535 U.S. 391, 402–03, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2001), the Supreme Court held that if a proposed accommodation would violate the rules of a seniority system, the accommodation is not reasonable for purposes of the ADA. Thus, Defendant has no duty to place Plaintiff in a regular assignment engineer position. Thus, Plaintiff was only qualified to hold the extra board engineer position, the duties of which were not susceptible to the accommodation that Plaintiff needed.

In view of this record, the Court finds that the evidence does not show that the Defendant regarded Plaintiff as substantially limited in her ability to perform a broad range of jobs. Rather, the undisputed evidence shows that the Defendant concluded Plaintiff was unable to perform one particular job, that of extra board engineer. As the Sixth Circuit has held, evidence of a Plaintiff's inability to perform one particular job is not sufficient evidence to show that the Defendant regarded Plaintiff as disabled for purposes of the ADA. Further, the Defendant had no obligation to accommodate Plaintiff in a position for which she lacked seniority. Accordingly, the Defendant is entitled to summary judgment on Plaintiff's "regarded as" claim.

## IV.

In light of the foregoing, the Defendant's Motion for Summary Judgment (Doc. # 25) is **GRANTED**.

This action is hereby **DISMISSED.** The Clerk is **DIRECTED** to enter Judgment accordingly.

**IT IS SO ORDERED.**