NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0467n.06

No. 18-1100

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| TOBY HODNETT, | ) | **FILED** |
|  | ) | Sep 11, 2018 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| CHARDAM GEAR COMPANY, INC., | ) | COURT FOR THE EASTERN |
|  | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) |  |
|  | ) |  |

Before: WHITE, DONALD, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Claiming that he was fired while on medical leave because of injuries sustained in a car accident, Toby Hodnett sued his employer, Chardam Gear Company, Inc., alleging violations of the Family and Medical Leave Act and the Michigan Persons with Disabilities Civil Rights Act. The district court granted summary judgment to Chardam on all claims. We AFFIRM.

I.

Before his dismissal on November 7, 2014, Hodnett had worked as a machinist at Chardam for nine and a half years. On Thursday, August 21, 2014, Plant Superintendent Erik Schmidt asked Hodnett to train another employee in an operation involving a particular part, and Hodnett refused, apparently unwilling to work with the other employee. Hodnett also claimed that the part was too heavy to lift, saying something about his shoulder. Schmidt weighed the part; it weighed four pounds. Schmidt told Hodnett to go home. Hodnett did not leave right away, but left work an

hour and a half early that day.  Later that day, Hodnett was involved in a car accident.  He went to the emergency room, where he says hospital staff ordered "a CAT scan, . . . an x-ray and . . . some prescriptions for pain pills."  Hodnett was told that "nothing was broken," was released from the hospital after a few hours, and was given a doctor's note stating that he should be excused from work the next day.

Hodnett informed the company that he would not be at work the following day, Friday, August 22, or Saturday, August 23, because of the accident.  Hodnett was also absent from work on Monday, August 25, and Tuesday, August 26.  Internal Chardam employment documents listed the reasons for these absences as "won't be in[,] no ride" for August 25, and simply "will not be in today" for August 26.  On Friday, August 29, Hodnett went in to work and requested a vacation day for September 2, 2014, the day after Labor Day.  Hodnett did not return to work after August 29, 2014.

Hodnett's affidavit states that he informed Chardam that he was under a doctor's care and that he would be off work due to injuries he sustained in the accident.  Specifically, Hodnett avers that he "was in communication with Jennifer Taylor [the keeper of Chardam's personnel records]."  According to Hodnett, he "kept hoping that [his] neck and back would heal and feel better, but instead the pain continued and worsened."  Because of the continuing pain, he sought treatment at Michigan Spine & Joint Center (MSJC).  On October 1, 2014, Hodnett successfully applied for lost-wage compensation benefits under his no-fault automobile insurance policy through Auto-Owners Insurance Company.

Chardam records dated October 4, 2014 and December 5, 2014, both signed by Jennifer Taylor, state regarding Hodnett, "First date of disability 8/22/14."  A document dated October 3, 2014 states "Period of disability 8/22 to current."

No. 18-1100, *Hodnett v. Chardam Gear Co., Inc.*

In the meantime, on October 18, Hodnett was examined by Dr. Adegbenro at MSJC. Dr. Adegbenro's report from that visit stated that Hodnett "was advised by this office . . . not to report for work" from October 18, 2014 to November 18, 2014, and that Hodnett "states he is not allowed to work [with] restrictions (i.e. sedentary work/light work)." Chardam admits that it received Dr. Adegbenro's report. On October 23, 2014, MSJC faxed a form called "Recommended Work Restrictions" to Auto-Owners; it does not appear that Chardam ever received this form. On that form, Dr. Adegbenro stated that Hodnett would require a work restriction of "[n]o lifting over 15-20 lbs." Dr. Adegbenro wrote that Hodnett could return to limited duty as of October 18, 2014 "with restrictions if [this] can be accommodated at work," but again noted that "[p]atient states he will not be allowed to work with restrictions." Hodnett later admitted, however, that he had never asked his employer whether he might be permitted to return to work with restrictions.

On November 7, 2014, Chardam's owner, Mike Broszka, sent Hodnett a letter terminating his employment; no reason was given. Hodnett responded a few days later, stating:

I have been on a protected medical leave since August 22, 2014.

I am ready willing and able to return to work on November 18, 2014 with no restrictions.

If my medical leave has expired before 11/18/14 please notify me as of when my leave time expired.

Broszka replied on November 18 as follows:

This letter is in response to your letter dated November 13, 2014. While you refer to having been on a "protected medical leave" since August 22, 2014, this is incorrect. You did not seek leave in accordance with the company's policies. You provided incorrect information to your doctor about having restrictions, when you never discussed with anyone at the company about whether you could work with any restrictions. You had no discussions with any supervisor at the company since your last day of work on August 29, 2014.

-3-

As you were advised in our letter dated November 7, 2014, your employment at Chardam Gear Company, Inc. has terminated.

Hodnett brought this action against Chardam in circuit court in Michigan, but Chardam removed the case to the United States District Court for the Eastern District of Michigan. Hodnett alleged violations of the Family and Medical Leave Act (FMLA) and the Michigan Persons with Disabilities Civil Rights Act (PWDCRA). Chardam moved for summary judgment. After a hearing, the district court granted the motion. On the FMLA claims, the court concluded that Hodnett had met the statutory requirement that he demonstrate a "serious health condition," and that he had established a prima facie case for interference and retaliation in violation of the FMLA. The district court observed that although Broszka's November 18, 2014 letter stated that Hodnett had not sought leave in accordance with Chardam's policies, Chardam had submitted no documentary evidence of any policies, employment-related or otherwise. Still the court determined that Chardam had met its burden of proffering a legitimate reason unrelated to Hodnett's exercise of his FMLA rights for terminating Hodnett: that Hodnett had given false information to his doctor regarding Chardam's ability to accommodate his work restrictions. The court also determined that Hodnett could not show that Chardam's stated reason was a mere pretext for terminating his employment based on an exercise of his FMLA rights. Hodnett's FMLA claims, therefore, failed. The district court also held that Hodnett's PWDCRA claim failed because Hodnett had failed to request an accommodation from Chardam and thus could not establish an essential element of that claim.

II.

*Family and Medical Leave Act.* "The FMLA enables employees covered by the Act to take up to twelve weeks of leave per year for various purposes specified in the statute, including the

employee's own 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Bryson v. Regis Corp.*, 498 F.3d 561, 569 (6th Cir. 2007) (quoting 29 U.S.C. § 2612(a)(1)(D)). Once the leave period ends, the employee "must be reinstated to [his] position or to a position equivalent in pay, benefits, and other terms and conditions of employment." *Id.* at 569–70 (citing 29 U.S.C. § 2614(a)(1)). There are two theories of liability under the FMLA: (1) the entitlement or interference theory, and (2) the retaliation or discrimination theory. *Id*. at 570. We have described those theories as follows:

> The "entitlement" or "interference" theory arises from [29 U.S.C.] §§ 2615(a)(1) and 2614(a)(1), which make it unlawful for employers to interfere with or deny an employee's exercise of [his] FMLA rights (§ 2615(a)(1)), and which require the employer to restore the employee to the same or an equivalent position upon the employee's return (§ 2614(a)(1)). The "retaliation" or "discrimination" theory, on the other hand, arises from § 2615(a)(2), which prohibits an employer from discharging or discriminating against an employee for "opposing any practice made unlawful by" the Act.

*Id.* (internal citations omitted).

To prevail on an interference claim under the FMLA, an employee must show: "(1) he was an eligible employee; (2) Defendant was an employer subject to the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave his employer notice of his intention to take FMLA leave; and (5) Defendant denied him FMLA benefits to which he was entitled." *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 840 (6th Cir. 2012) (citation omitted). To establish a prima facie case of retaliation under the FMLA, Hodnett "must show that (1) he engaged in an activity protected by the Act; (2) Defendant took an adverse employment action against him; and (3) that there was a causal connection between the protected activity and the adverse employment action." *Id.* at 842 (citation omitted).

The district court found that Hodnett had established prima facie claims of interference and retaliation. Chardam does not challenge those conclusions. But that is not the end of the inquiry. "[I]nterference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008) (quoting *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006)). If the employer "proffers such a justification, then the plaintiff may seek to rebut it" by showing that the justification was pretextual. *Id.* (citation omitted). An employee "can 'refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Id.* (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)). The same burden-shifting framework exists for retaliation claims. *Romans*, 668 F.3d at 842; *see also Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 280–81 (6th Cir. 2012).

Chardam offered a legitimate reason for firing Hodnett, unrelated to the exercise of his FMLA rights. Hodnett responded to Chardam's November 7, 2014 termination letter by asserting that he had been on protected medical leave since August 22, 2014. Chardam responded by letter, explaining that Hodnett's employment relationship with Chardam had been terminated. Chardam said: "You provided incorrect information to your doctor about having restrictions, when you never discussed with anyone at the company about whether you could work with any restrictions. You had no discussions with any supervisor at the company since your last day of work on August 29, 2014."[1] This justification for firing Hodnett—that Hodnett had given false information to the

---

[1] Hodnett argues that this letter is inadmissible as it is unauthenticated. But Hodnett did not raise this evidentiary issue below and has therefore forfeited the argument. *See Armstrong v. City of*

doctor about his ability to return to work—satisfies Chardam's burden to provide a legitimate reason, unrelated to the exercise of his FMLA rights, for terminating Hodnett's employment. *Cf. Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (stating that a defendant need offer only "what appears to be a legitimate explanation" for the employment decision).

Chardam having stated a legitimate reason for terminating Hodnett's employment, the burden shifted to Hodnett to show that the reason given was pretextual. *See Grace*, 521 F.3d at 670. Hodnett offers two arguments in support.

First, he contends that Chardam provided contradictory explanations for the termination. According to Hodnett, Chardam "first claimed it had no contact from Hodnett and then claimed that Hodnett had provided incorrect information to his doctor in the doctor's note that Hodnett provided to Chardam." But there is no contradiction here. Chardam stated in its letter that Hodnett had not spoken with a supervisor since his last day at work; the fact that Chardam received Hodnett's doctors report is not inconsistent with that position. The doctor's office, not Hodnett, sent the report by fax to Chardam.

Hodnett also argues that the purported justification for firing him—that he had made an incorrect statement to his doctor—had no basis in fact because it was true that he would have been unable to return to work with restrictions. In support, Hodnett points only to his own affidavit, in which he avers that "[i]t was my understanding that Chardam would not let me work after the automobile accident with the restrictions imposed at that time by my doctor," and "I did not submit

---

*Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006). Hodnett, moreover, relied on the letter in the court below to support his argument that Chardam gave conflicting justifications for terminating his employment.

any false forms to Chardam, and I did not engage in any fraud or dishonesty, and I did not provide any incorrect information to either Chardam or my doctor." Hodnett notes that Chardam has offered no evidence to rebut these assertions or to support the conclusion that Hodnett would have been allowed to return to work with restrictions.

We are unpersuaded. It is Hodnett's burden to show that Chardam's statement had no basis in fact. *See Romans*, 668 F.3d at 842. Hodnett admitted that he never asked to be permitted to return to work with restrictions. Thus, the second portion of Chardam's asserted reason is undisputed: "You provided incorrect information to your doctor about having restrictions, *when you never discussed with anyone at the company about whether you could work with any restrictions*." Hodnett's assertion in his affidavit that he *thought* that Chardam would not let him return to work with restrictions is insufficient to show that Chardam's reason had no basis in fact. Hodnett has therefore failed to satisfy his burden of showing that Chardam's proffered justification was pretextual, and the district court properly granted summary judgment in favor of Chardam on Hodnett's FMLA claims.

*Michigan Persons with Disabilities Civil Rights Act.* The PWDCRA states that "a person shall accommodate a person with a disability for purposes of employment, . . . unless the person demonstrates that the accommodation would impose an undue hardship." Mich. Comp. Laws § 37.1102(2). But the onus is on the person with a disability to request an accommodation. *See id.* § 37.1210(18) ("A person with a disability may allege a violation against a person regarding a failure to accommodate under this article only if the person with a disability notifies the person in writing of the need for accommodation within 182 days after the date the person with a disability knew or reasonably should have known that an accommodation was needed."). The district court

concluded that Hodnett never requested an accommodation, citing Hodnett's own deposition testimony:

> Q. Did you ever try to return to work and ask for accommodations maybe within a different position at Chardam or any other company where you might have been able to get different responsibilities that wouldn't have been so physically demanding as your job was before?
>
> A. No.

On appeal, Hodnett challenges the district court's conclusion only briefly, noting that Chardam received the doctor's note that set forth his work restrictions and citing *Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 351 (6th Cir. 2015), for the proposition that a doctor's note containing work restrictions may be sufficient to constitute a request for an accommodation.

Hodnett's arguments are unavailing. As the district court recognized, Hodnett testified that he never requested an accommodation from Chardam. And even though Chardam received Hodnett's doctor's report, the report cannot qualify as a request for an accommodation, even under *Aldini*. The court in *Aldini* focused on the effect of the plaintiff's retraction of his request for an accommodation under the Americans with Disabilities Act (ADA).[2] *Aldini*, 628 F. App'x at 350–52. Of the plaintiff's initial request for an accommodation, the court stated, "As the district court found and the parties agree, Aldini did request an accommodation by presenting a doctor's note setting out certain restrictions. . . ." *Id.* at 351. The doctor's note "restricted Aldini to lifting less than 25 pounds and required a 15-minute break every two hours." *Id.* at 349. Unlike the doctor's

---

[2] Although *Aldini*'s focus was the ADA, this court has recognized that the PWDCRA "'substantially mirrors' the ADA, and claims under both statutes are generally analyzed identically." *Steward v. New Chrysler*, 415 F. App'x 632, 641 (6th Cir. 2011) (quoting *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 597 (6th Cir. 2002)). One key distinction, we note, is that unlike the ADA, the PWDCRA requires a plaintiff to notify his or her employer in writing of the need for accommodation. Mich. Comp. Laws § 37.1210(18); *see also Petzold v. Borman's, Inc.*, 617 N.W.2d 394, 398–99 (Mich. Ct. App. 2000).

report in *Aldini* that set forth the plaintiff's work restrictions, Dr. Adegbenro's report stated that Hodnett "was advised by this office . . . not to report for work" from October 18, 2014 to November 18, 2014. The report did not list what restrictions Hodnett would need to be able to work, because as the reported noted, Hodnett had told the doctor that "he is not [allowed] to work [with] restrictions (i.e. sedentary work/light work)." Nothing in the report indicates a request for an accommodation because Hodnett had informed his doctor that no accommodations were possible. Accordingly, Hodnett's argument fails even under our unpublished decision in *Aldini*. He has not shown that the district court erred by dismissing his PWDCRA claim.

* * *

We AFFIRM the judgment of the district court in favor of Chardam.