**Suzan N. SALIM, Plaintiff–Appellant,**

v.

**MGM GRAND DETROIT, L.L.C., Defendant–Appellee.**

**No. 03–1171.**

United States Court of Appeals, Sixth Circuit.

Sept. 2, 2004.

Thomas W. Elkins, Elkins & Associates, Canton, MI, for Plaintiff–Appellant.

Louis Theros, Rick A. Haberman, Dickinson, Wright, PLLC, Detroit, MI, for Defendant–Appellee.

Before CLAY and GILMAN, Circuit Judges; and MATIA, District Judge.*

* The Honorable Paul R. Matia, Chief United States District Judge for the Northern District

CLAY, Circuit Judge.

Plaintiff Suzan N. Salim, a former blackjack dealer with Defendant MGM Grand Detroit, L.L.C., appeals the January 7, 2003 order of the district court, denying reconsideration of its October 29, 2002 order granting summary judgment for MGM on her claims for common law slander and for discriminatory discharge and other discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.* ("ADA"), and the Michigan Persons with Disabilities Civil Rights Act, MICH. COMP. LAWS § 37.1101 *et seq.* ("PWDCRA"). For the reasons that follow, we AFFIRM the district court's order denying Plaintiff's motion for reconsideration.

## I.

### FACTS

A. Substantive Facts

Plaintiff Suzan N. Salim, a 38 year-old female at the time Defendant MGM hired her as a blackjack dealer in February, 2000, takes two insulin injections a day for her diabetes, which was diagnosed in 1992. The insulin does not always control her diabetes. Thus, her doctors have told her to stop smoking, diet, exercise, lose weight, and avoid foods that are fatty, salty, and sweet. Plaintiff testified that she smokes up to a pack and a half of cigarettes per day and has never tried to quit smoking. Plaintiff also has been unable to control her weight.

Prior to becoming an employee of MGM, Plaintiff worked Monday through Friday, from 9 a.m. to 3 p.m., at the party store she and her husband owned. Control of Plaintiff's blood sugar was a problem before, during, and after her tenure at MGM. Plaintiff testified that prior to her discharge from MGM her "life was pretty normal." She was happy and able to do her normal housework. Plaintiff also testified that her diabetes prevents her only from lifting too much weight, anything exceeding twenty pounds.

Because MGM is a 24–hour operation, the casino operates on three shifts—morning (noon to 8 p.m.), swing (8 p.m. to 4 a.m.) and sunrise (4 a.m. to noon). During her interview with MGM, Plaintiff told the interviewer (identified only as "Michael") that she could not work nights. Michael responded that her medical condition would be taken into consideration when assigning her a shift.

MGM hired Plaintiff as a dealer for blackjack and three-card poker on February 28, 2000, after which Plaintiff participated in a three-day orientation. During the orientation, the instructor (identified only as "Louis" or "Lewis") asked Plaintiff and the other trainees to indicate two shift preferences. Plaintiff indicated only the morning shift, believing that she could not work the other shifts without adversely impacting her diabetes. Lewis advised Plaintiff to pick a second shift and told her to pick the swing shift as her second shift. Even though Plaintiff was adamant that she could not work at night, Plaintiff testified that she "never thought about" choosing the sunrise shift, which runs in the morning, from 4 a.m. to noon.

On the last day of the orientation, Becky Meade, the shift supervisor, informed Plaintiff that she would be working the swing shift (8 p.m. to 4 a.m.). Because Plaintiff believed that she would not be able to control her sugar levels if she worked at night, she asked Meade to assign her to the morning shift, but Meade refused to consider changing Plaintiff's schedule. Meade allegedly then stuck her

of Ohio, sitting by designation.

finger in Plaintiff's face and said, "You work for our favor, you don't work for your favor." Plaintiff then told Meade that she had trouble controlling her blood sugar at night and asked whether there was a procedure to have her medical condition evaluated for a shift change. Meade told Plaintiff to bring in supporting medical information and MGM would consider a change. Plaintiff alleges that other (unidentified) trainees, who allegedly all were new employees and were not disabled, were assigned a daytime shift.

Approximately three weeks after she began working the swing shift at MGM, Plaintiff's medication failed to control her blood sugar and she began to have physical problems, including becoming dizzy, having difficulty concentrating, and falling down. On about ten occasions, she had stomach cramps, heart palpitations and bouts of diarrhea and sweating between the hours of 1:30 and 2:00 a.m. She would run to the bathroom and later return to her station when she felt better or, if she did not feel better, she would go home. She also began to experience blurry vision during her shift as a consequence of elevated blood sugar. Plaintiff did not experience these symptoms during the day time when she was not working. She also began to develop sores on her legs.[1]

During her employment with MGM, Plaintiff sought medical treatment from at least four different physicians, all of whom wrote letters on Plaintiff's behalf to be given to MGM, requesting that she be assigned a day shift at the casino. Plaintiff provided these letters to Becky Meade, who forwarded them to the human resources department. MGM denied all of Plaintiff's requests for a morning schedule without explanation. Plaintiff claims that she missed 42 days of work during her seven months of employment at MGM, mostly due to her medical condition.

On October 17, 2000, Becky Meade told Plaintiff that her employment had been terminated for falsifying a return-to-work note in late August, 2000. Plaintiff admitted to altering a note from one of her physicians, Dr. Harold Rodner, such that it indicated that she should not resume her full work load until August 28, 2000, instead of August 26, 2000, as the note originally had read. She claims, however, that she had the permission from an unidentified nurse in Dr. Rodner's office to change the date herself. Dr. Rodner testified, however, that no one at his office had made that change and that it would have been against office policy in any event.

Following her termination, Plaintiff attempted to obtain work at other casinos in Detroit. She allegedly was informed by the Michigan Gaming Commission that she could not be hired as a result of having submitted a fraudulent doctor's note to MGM.

### B. Procedural History

Plaintiff filed a complaint against MGM alleging a common law slander claim as well as claims for wrongful discharge and other discrimination because of her disability. According to her complaint, Plaintiff is an insulin-dependent diabetic and suffers from diabetic ocular disease and glaucoma. Plaintiff alleged that her medical condition worsened while employed at MGM because she was required to work the night shift. She allegedly asked to work the day shift on at least four separate occasions in order to make it easier

---

1. Plaintiff also alleges that she asked an unidentified human resources employee if she could store her insulin in a refrigerator during work, but her request was denied. Plaintiff allegedly could not bring her insulin to work until she changed her prescription to a different type of insulin.

for her to control her medical conditions. MGM denied Plaintiff's requests, and Plaintiff claims that these denials were discriminatory.

MGM terminated Plaintiff's employment on October 20, 2000 on the ground that she had submitted a fraudulent doctor's note for unpaid leave. Plaintiff alleged that MGM's ground for termination was a pretext for discrimination and that MGM had filed slanderous and false information about Plaintiff with state agencies, including the agency responsible for unemployment insurance.

On October 29, 2002, the district court issued an opinion and order granting summary judgment for MGM on all of Plaintiff's claims. The district court found, as a matter of law, that Plaintiff was not disabled under the ADA and the PWDCRA because she could not show that she was substantially limited in her ability to perform a major life activity. Although Plaintiff asserted that her major life activities of doing housework, working and walking were substantially limited, the court found otherwise, reasoning: (1) Plaintiff had admitted at deposition that she was able to do housework until her termination; (2) Plaintiff had not shown that she was unable to perform a broad class of jobs and testified that her diabetes prevents her only from lifting things that weigh over 20 pounds; and (3) there was no evidence as to the frequency or duration of the leg ulcers she occasionally suffered or whether the ulcers would have any permanent or long-term effect on her ability to walk. The court rejected Plaintiff's failure to accommodate claim because she was not disabled at the time she requested an accommodation.

The district court also found that there was no evidence that Plaintiff's disability played a part in MGM's termination decision. MGM terminated Plaintiff's employment for falsifying a doctor's note regarding the date she could return to work. Plaintiff admitted that she altered the form, and that the doctor's office had told MGM that the date change had not been authorized. Last, the district court dismissed Plaintiff's slander claim.

Plaintiff filed a motion for reconsideration regarding the court's dismissal of her disability claims. She asserted that the basis for her disability is her inability to control her blood sugar levels, thereby impairing her ability to take care of herself and to think. Plaintiff argued that her numerous episodes of sickness during her working hours and her inability to work for days demonstrates a disability. The court found that an impaired ability to think was a new argument that should have been raised in opposition to MGM's summary judgment motion. The court nevertheless addressed the merits of Plaintiff's new argument and found that Plaintiff was not disabled on this basis either. The court denied Plaintiff's motion for reconsideration, and Plaintiff timely appealed.

II.

DISCUSSION

A. Standard of Review

The Court reviews a district court's grant of summary judgment *de novo* and affirms such a judgment only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Cotter v. Ajilon Serv., Inc.,* 287 F.3d 593, 597 (6th Cir.2002). "The Court should believe the evidence presented by the non-movant, and draw all justifiable inferences in his favor." *Id.* (citing *Plant v. Morton Int'l, Inc.,* 212 F.3d 929, 933–34 (6th Cir. 2000)).

B. Analysis

The ADA prohibits "covered entities," like MGM, from discriminating against "a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). Unlawful discrimination includes firing an individual because of her disability, as well as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . ., unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b)(5)(A). "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

Like the ADA, the PWDCRA prohibits an employer from discharging an employee because of her disability, MICH. COMP. LAWS § 37.1201(d)(1)(b), and imposes a duty on the employer to accommodate an individual's disability absent undue hardship on the employer. *Id.* § 37.1201(1)(g) (prohibiting discrimination "when adaptive devices or aids may be utilized thereby enabling that individual to perform the specific requirements of the job"); *id.* § 37.1210 (discussing burden of proof for a failure to accommodate claim); *see also Peden v. City of Detroit,* 470 Mich. 195, 680 N.W.2d 857, 863 (Mich.2004) ("[L]ike the ADA, the PWDCRA generally protects only against discrimination based on physical or mental disabilities that substantially limit a major life activity of the disabled individual, but

that, with or without accommodation, do not prevent the disabled individual from performing the duties of a particular job.") (citing *Sanchez v. Lagoudakis,* 458 Mich. 704, 581 N.W.2d 257, 262 (1998)).[2]

Plaintiff repeatedly asked to switch from the swing shift to the morning shift, and MGM repeatedly denied her requests without explanation. Because there is no dispute that Plaintiff was qualified for her job as a blackjack dealer, MGM's conduct was potentially unlawful if plaintiff was disabled at the time. If so, then MGM was obligated to provide her with an accommodation in the form of a modified work schedule, unless that accommodation would not have been "reasonable" and/or would have posed an "undue hardship" to MGM. *See* 42 U.S.C. § 12111(9)(B) (providing that a modified work schedule can be a reasonable accommodation); MICH. COMP. LAWS § 3737.1210(15) (listing "altering the schedule" as a potential accommodation).

Under the ADA, a "disability" means either (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Similar to the ADA, the PWDCRA prohibits discrimination against an individual with a disability, defined as a "determinable physical or mental characteristic" that "substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position"; a history of such a characteristic; or being regarded as

---

**2.** Although there are some linguistic differences between the ADA and the PWDCRA, the parties have not argued that these differences are material in this case. *Cf. id.* at 870 (noting that both the ADA and the PWDCRA "require *essentially* the same analysis, and in the predominant number of cases, the result under either statute may well be the same," but that linguistic differences may require separate analysis of the two statutes) (emphasis in original).

having such a characteristic. MICH. COMP. LAWS § 37.1103(d). There is no material distinction in these definitions for purposes of this case and, therefore, we hereafter refer only to the ADA's definition.

Plaintiff argues that she satisfied the first definition of disability; she does not allege a record of a disability or being regarded as disabled. There is no dispute that Plaintiff suffers from a physical impairment. She is an insulin-dependent diabetic. To avoid summary judgment, however, Plaintiff must show more than a physical impairment. *See Nawrot v. CPC Int'l*, 277 F.3d 896, 903 (7th Cir.2002) ("[N]ot all plaintiffs with health conditions have a 'disability' within the meaning of the ADA."). Although Plaintiff is a diabetic, her "diabetic status, per se, is not sufficient to qualify as a disability under the ADA." *Id.* at 904. Her diabetes must substantially limit one or more major life activities. 42 U.S.C. § 12102(2)

According to the ADA regulations, a major life activity means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Thinking also has been held to be a major life activity. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 307 (3d Cir.1999).

An individual is "substantially limited" in performing a major life activity if she is either (1) unable to perform a major life activity that the average person in the general population can perform (e.g., walking) or (2) significantly restricted as to the condition, manner, or duration under which she can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity (e.g., being able to walk only for brief periods of time). 29 C.F.R. § 1630.2(j)(1)(i)-(ii).

Factors relevant to this determination include: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or the expected permanent or long-term impact resulting from the impairment. *Id.* § 1630.2(j)(2)(I)-(iii).

"When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs" or " 'a broad range of jobs in various classes.' " *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (quoting 29 C.F.R. § 1630.2(j)(3)(i)). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(I).

Plaintiff claims that her diabetes substantially limited her ability to work, think and take care of herself. In support, Plaintiff points to the medical evidence showing that her blood sugars are not controlled and that these major life activities are impaired during unpredictable hypoglycemic episodes that pose the risk of death. She points to an unspecified number of episodes while working at MGM when she became dizzy, had difficulty breathing, and fell down. On about ten occasions at work, she had stomach cramps, heart palpitations and bouts of diarrhea and sweating between the hours of 1:30 and 2:00 a.m. She also began experiencing blurry vision while at work and began to develop leg sores.

We hold that Plaintiff has not adduced sufficient evidence to show that her diabetes substantially impaired her ability to think and care for herself. It is undisputed that Plaintiff's ability to control her blood sugar was a problem both before,

during, and after her tenure at MGM. Notwithstanding that fact, Plaintiff held a five-day-a-week job prior to joining MGM and sought employment as a casino worker after her termination from MGM. Further, Plaintiff testified that, prior to her discharge from MGM, her "life was pretty normal." She stated that she was happy and able to do her normal housework and admitted that her diabetes prevented her only from lifting more than 20 pounds. Although Plaintiff occasionally experienced uncomfortable symptoms while at work, Plaintiff testified that she did not experience them outside of the workplace. Accordingly, there is no triable issue as to whether Plaintiff was substantially limited in her ability to perform a non-work major life activity.

We reject Plaintiff's reliance on the Seventh Circuit's decision in *Nawrot, supra.* There, the court held that the plaintiff's diabetes substantially limited his ability to think and care for himself where (1) he had to inject himself with insulin approximately three times a day and test his blood sugar level at least ten times a day; (2) despite the injections, he could not completely control his blood sugar level; (3) he suffered from unpredictable hypoglycemic episodes that impaired his ability to think coherently, caused him to lose consciousness and fall several times, and impaired his ability to express coherent thoughts; (4) his diabetes had progressively worsened, such that he was diagnosed as a "brittle" diabetic, very likely to develop hypoglycemic attacks; (5) his diabetes had caused the early stages of kidney damage and nerve damage in his feet, affecting his ability to sense feeling in his feet; and (6) he was on a restrictive diet and suffered from depression and mood changes that accompanied his swings in blood sugar level. *Nawrot,* 277 F.3d at 904–05.

Plaintiff's alleged impairments are nowhere near the impairments suffered by the Plaintiff in *Nawrot.* There is no evidence in the record that Plaintiff had to check her blood sugar at all during the day, let alone ten times. There also is no evidence that Plaintiff was unable to express herself coherently (only difficulty concentrating) or that her diabetes has progressively worsened, such that she is now very likely to develop hypoglycemic attacks. Nor is there evidence that she has suffered any kind of permanent physical damage from her diabetes. And although Plaintiff's doctors have advised her to diet, there is no evidence that Plaintiff observes a restrictive diet or that she experiences extreme mood changes. Thus, the *Nawrot* case does not support Plaintiff's argument that she was substantially limited in her ability to think and care for herself.

The evidence also is not sufficient to show that Plaintiff was substantially limited in her ability to work, because the record shows only that she could not perform a single job (night casino dealer) as opposed to a broad class or range of jobs. Indeed, she believes that she can perform the dealer job, despite her disabilities, as evidenced by her attempt to obtain employment as a dealer following her termination. She just cannot perform the job at nighttime (or apparently between the hours of 4 a.m. and noon). Such a schedule-specific job restriction is not sufficient to qualify as a substantial impairment on her ability to work. *See Cotter v. Ajilon Services, Inc.,* 287 F.3d 593, 598 (6th Cir. 2002) (rejecting argument that doctor's order that the plaintiff needed to take frequent breaks to avoid stress and to avoid prolonged overtime demonstrated a substantial impairment of the plaintiff's ability to work); *see also Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 885 (6th Cir.1996) (holding that an employer does

not necessarily regard an employee as disabled "simply by finding the employee to be incapable of satisfying the singular demands of a particular job") (quotation marks and citation omitted); *Chiles v. Machine Shop, Inc.,* 238 Mich.App. 462, 606 N.W.2d 398, 407–08 (Mich.Ct.App.1999) (holding that, under PWDCRA, "the inability to perform a *particular* job does not constitute a substantial limitation. Instead, the impairment must significantly restrict an individual's ability to perform at least a wide range of jobs") (emphasis in original; *citations omitted*).

Plaintiff also challenges the district court's dismissal of her reasonable accommodation claim on the ground that the court erroneously required her to demonstrate an adverse employment action. The court, however, did nothing of the kind. The court explicitly dismissed Plaintiff's accommodation claims because she had failed to create a genuine issue of fact as to whether she is disabled under the ADA and the PWDCRA. The court correctly held that, because Plaintiff failed to show that she was a qualified individual with a disability, MGM had no duty to accommodate Plaintiff under those statutes.

On appeal, Plaintiff has not challenged the district court's dismissal of her wrongful discharge claim, nor has she raised it in her statement of issues, perhaps because her notice of appeal challenged only the court's denial of her motion for reconsideration, which challenged only the finding that she was not disabled. Thus, she has waived the wrongful discharge issue on appeal. *See, e.g., Security Watch, Inc. v. Sentinel Sys., Inc.,* 176 F.3d 369, 376 (6th Cir.1999) (holding that generally arguments not briefed on appeal are deemed abandoned or waived). In any event, we are satisfied that the district court's dismissal of Plaintiff's wrongful discharge claim was correct for the reasons stated by the district court.

## III.

## CONCLUSION

For all the foregoing reasons, we AFFIRM the district court's order denying Plaintiff's motion for reconsideration of the court's order granting summary judgment.