Jose A. AGUIRRE–RODRIGUEZ, et al., Plaintiff(s)

v.

LITTLE CAESARS, et al., Defendant(s)

No. CIV. 04–1361(JAG).

United States District Court, D. Puerto Rico.

May 10, 2006.

Juan R. Rodriguez, Rodriguez Lopez Law Office, Ponce, PR, for Plaintiffs.

Edwin J. Seda–Fernandez, Adsuar, Muniz, Goyco & Besosa PSC, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On September 10, 2004, plaintiffs Jose A. Aguirre Rodriguez ("Aguirre"), his wife Brendaly Toro Garcia ("Toro"), and their minor daughter (collectively "plaintiffs"), filed suit against Puerto Rican Pizza, Inc. d/b/a Little Caesars ("Little Caesars"), alleging violations to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101—12213 (Docket No. 12).[1] On October 3, 2005, Little Caesars moved for summary judgment on plaintiffs' claims (Docket No. 44). On November 15, 2005, plaintiffs filed their opposition (Docket No. 54). For the reasons discussed below, the Court GRANTS defendant's motion for summary judgment.

## FACTUAL BACKGROUND [2]

Aguirre has been an insulin-dependent diabetic (Type I) since the age of twelve. On April 6, 2000, Aguirre began to work at Little Caesars as a part-time employee. Aguirre's employers learned of his diabetic condition very early in the employment relationship. Approximately ten months after he began working there, Aguirre was promoted to the position of Assistant Manager over other employees who had been working there longer. As Assistant Manager, Aguirre was responsible for supervising other employees and implementing the company's regulations.

Little Caesars' security guidelines provide that the restaurant's back door must remain closed at all times, unauthorized personnel are not allowed in through the back door, and the back door cannot be opened after dark. Furthermore, no one, other than Little Caesars employees, is allowed behind the front counter or in the back working area. Aguirre was familiar with these regulations.

Toro frequently visited the store where her husband worked to bring him food and his insulin. She would stay in the store's lobby for approximately thirty to forty minutes and would sometimes go into the back of the store to inject him with insulin. Toro admits that at least on one occasion, Aguirre opened the back door for her during the night hours. Toro went into the

1. The complaint also included claims under the Civil Rights Act, 42 U.S.C. § 1983, and Title VII, 42 U.S.C. §§ 2000e—2000e–17, as well as claims against Aguirre's supervisors. The Court, however, has already dismissed these claims. (See Docket Nos. 16, 27, and 28).

2. Because plaintiffs failed to submit certified translations of the deposition testimony they relied upon for their statement of facts, the Court takes the relevant facts from defendant's statement. See Estades–Negroni v. Assocs. Corp. of N. Am., 359 F.3d 1, 2 (1st Cir.2004) ("In collecting a record for summary judgment a district court must sift out non-English materials, and parties should submit only English-language materials.").

back of the store to inject Aguirre with insulin even though he was fully capable of doing so himself. Aguirre did not request any accommodation due to his condition.

Aguirre admits that prior to April 9, 2003, the store manager had warned him that he could not allow his wife to enter the back area and that he was endangering the other employees by opening the back door after dark. On April 9, 2003, Marilyn Perez, the Area Supervisor, and Nelson Santana, the Operations Director, informed Aguirre that he was engaging in a series of violations to Little Caesars regulations and that he would be suspended without pay for a week. They also informed him that after returning from his suspension, he would be re-trained for a period of four weeks because of other deficiencies in his performance.

On April 15, 2003, Aguirre returned from his suspension. On April 23, 2003, Aguirre resigned his position effective immediately.

## DISCUSSION

### A. *Summary Judgment Standard*

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52. (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden

of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is "insufficient to defeat a properly supported motion for summary judgment." *Id.* at 252. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore

"conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

**B.** *Little Caesars' Motion for Summary Judgment*

■ To establish a prima facie case under the ADA, plaintiff must prove by a preponderance of the evidence: (1) that he is disabled within the meaning of the ADA; (2) that he is able to perform the essential functions of his job, with or without reasonable accommodation; and (3) that the adverse employment decision was based in whole or in part on his disability. *Phelps v. Optima Health Inc.*, 251 F.3d 21, 24 (1st Cir.2001); *Marcano–Rivera v. Pueblo Int'l.*, 232 F.3d 245, 251 (1st Cir.2000); *Garcia–Ayala v. Lederle Parenterals Inc.*, 212 F.3d 638, 646 (1st Cir.2000).

A disability under the ADA is a physical or mental impairment that substantially limits one or more of a person's major life activities. 42 U.S.C. § 12102(2)(A)-(C); *see also Santiago Clemente v. Executive Airlines*, 213 F.3d 25, 30 (1st Cir.2000). In order to determine whether plaintiff is disabled under the ADA, the Court must conduct a tripartite analysis. *Carroll v. Xerox Corp.*, 294 F.3d 231, 238 (1st Cir. 2002); *Bragdon v. Abbott*, 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). First, plaintiff must prove that he suffers from a physical or mental impairment. *Carroll*, 294 F.3d at 238. Second, the Court must evaluate the life activities affected by the impairment to determine if they constitute a "major" life activity. *Id.* Lastly, "tying the two statutory phrases together, we ask whether the impairment substantially limits the activity found to be a major life activity." *Lebron–Torres v. Whitehall Labs.*, 251 F.3d 236, 239–40 (1st Cir.2001); *see also Gelabert–Ladenheim v. American Airlines*, 252 F.3d 54, 55 (1st Cir.2001). Furthermore, plaintiff must possess a record of such impairment and be regarded as having such an impairment. 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(e)(2)(g)(1)(2)(3).

At the first prong, Little Caesars argues that Aguirre is not a disabled individual because, even if his diabetes can be considered a disability, it can be and is corrected by the injection of insulin. Thus, because it can be corrected, it does not substantially limit a major life activity. Little Caesars rests its argument upon *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), where the Supreme Court held that commercial airline pilots could not be denied employment because their condition could be corrected through the use of glasses or contact lenses. "[A] person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not 'substantially limi[t]' a major life activity." *Id.* at 482–483.

When specifically faced with the question of whether diabetes is a disability which substantially limits a major life activity, some courts have found that it is, *see Branham v. Snow*, 392 F.3d 896 (7th Cir.2004); *Nawrot v. CPC Int'l*, 277 F.3d 896 (7th Cir.2002); *Lawson v. CSX Transp. Inc.*, 245 F.3d 916 (7th Cir.2001), while others have found that it is not, *see Mikruk v. U.S. Postal Service*, 115 Fed. Appx. 580 (3rd Cir.2004); *Salim v. MGM Grand Detroit*, 106 Fed.Appx. 454 (6th Cir.2004); *Warrington v. Southwestern Bell Telephone Co.*, 93 Fed.Appx. 593 (5th Cir.2004). This Court, however, need not enter into such a discussion in Aguirre's case because even assuming *arguendo* that Aguirre is in fact a disabled individual under the ADA, he fails to establish a cause of action under the ADA. Thus, the Court will proceed under the assumption that the first prong is met.

Under the second prong, Aguirre has to show that he is able to perform the essen-

tial functions of his job with or without a reasonable accommodation. Because there seems to be no controversy over Aguirre's ability to perform his job functions, the Court finds that the second prong is also met.

At the third prong, however, Aguirre's case begins to falter. To survive summary judgment Aguirre must show that Little Caesars took an employment action adverse to him due solely or in part to his disability and he has failed to do so. He claims that the week-long suspension coupled with the retraining for no valid reason was a hostile and degrading act which compelled him to resign. But Aguirre is unable to show that the suspension was in any way motivated by his diabetes condition. Little Caesars argues that it took remedial measures against Aguirre because he had incurred in multiple violations to its rules and regulations and Aguirre simply has no evidence to show that the proffered reason is a mere pretext for discrimination.

Accordingly, Aguirre fails to meet the third prong and, thus, fails to establish a claim for discrimination under the ADA. Furthermore, since no federal claims to ground jurisdiction remain in this case, plaintiffs' supplemental state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Little Caesar's motion for summary judgment. Plaintiffs' ADA claims are hereby dismissed **with prejudice**. Supplemental state law claims are dismissed **without prejudice**. Judgment shall enter accordingly.

IT IS SO ORDERED.