NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0974n.06
Filed: December 14, 2005

**No. 04-2531**


**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

STEVEN AGNEW,

      **Plaintiff-Appellant,**

v.

HEAT TREATING SERVICES OF
AMERICA,

      **Defendant-Appellee.**

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

_____/


**BEFORE:** **SILER, CLAY and ROGERS, Circuit Judges.**

      **CLAY, Circuit Judge.** Plaintiff, Steve Agnew, appeals from the district court's order

granting summary judgment to Plaintiff's former employer, Defendant, Heat Treating Services of

America ("HTS"), Plaintiff alleged that HTS discriminated against him in violation of the Americans

With Disabilities Act ("ADA"). For the reasons set forth below, we **AFFIRM** the district court's

order.

I.

      Plaintiff sustained a back injury while serving in the United States Marine Corps. ("USMC").

Plaintiff was honorably discharged from the USMC in 2001 as a result of that injury. A note from

the USMC health services to Plaintiff's company commander indicated that administrative

separation was recommended because Plaintiff was evaluated for lower back pain and was found

to have a "physical condition," "not a disability." (J.A. at 131) An MRI report dated August 2000 from the USMC indicated that Plaintiff had disc bulges.

Plaintiff applied for a job at HTS plant 3 as fork lift operator on October 2, 2002. Plaintiff indicated on his application that he did not have any physical limitations that would preclude him from performing any essential functions of his job. At the interview, Plaintiff was given the job description for the forklift position. The job description showed that, in addition to his duties as a forklift operator, Plaintiff would also have to cross train for other positions, including wheelabrator, and material control. The job description also contained an extensive list of physical requirements, which notably included: walking, balancing, climbing, standing, turning, stooping, crouching, kneeling, sitting, reaching, carrying, pushing, pulling and handling.

Plaintiff acknowledged that he had read the job description, did not have any questions regarding the job, and did not see any problems with the duties or physical requirements of the job. Plaintiff contends, however, that during his interview with the Vice President of Human Resources, Kim Hynes, he informed Hynes of his back injury/disability from the USMC. Hynes claims to have no recollection of this exchange.

Plaintiff was given a physical examination on October 3, 2002 and was found to be able to perform essential functions of the job. Plaintiff was also given a "human performance evaluation." During that evaluation, Plaintiff was required to: simulate stacking of 12 lb. parts from steel tub to basket, use partition to reach over the sides of the steel tub, lift parts from a 3 foot high platform, turn 90 degrees, and place parts on a waist-high shelf. Plaintiff successfully performed the exercise 100 times in 15 minutes as required, and passed the evaluation. Plaintiff was offered the job.

Plaintiff began working at HTS on October 17, 2002. Within the first week of the job, Plaintiff was asked to sort parts. Sorting parts involved leaning over a box and lifting parts weighing up to 10 lbs. (apparently the same activity Plaintiff performed during the performance evaluation). According to Plaintiff, the bending and standing involved in sorting parts caused him extreme back pain. Despite this pain, Plaintiff complied with the request, and was thereafter required by the plant manager, Steven Prebish, to sort parts several times a week.

Plaintiff says that he would often tell Prebish that sorting parts was a problem for him. Plaintiff told Prebish that he [Plaintiff] was a disabled veteran with a back condition, and would not be able to sort parts on a daily basis. Plaintiff also told Prebish that if the fact that he could not sort parts was going to be a problem then he would get another job. Despite his protestations, however, Plaintiff sorted the parts whenever asked to do so.

On one occasion, Plaintiff was able to comfortably sort parts in an old chair that he [Plaintiff] found lying around the plant. The chair was thrown out, and although Plaintiff mentioned that he was comfortable sorting the smaller parts while sitting down, Plaintiff never asked for another chair or to be allowed to sort only the smaller parts.

On February 12, 2003, after another conversation with Plaintiff about Plaintiff's unwillingness to sort parts, Prebish sent an email to Kim Hynes, inquiring whether or not there was anything in Plaintiff's file that would restrict Plaintiff from work because of a bad back. Hynes responded that Plaintiff had passed the performance evaluation, simulated sorting parts, and indicated that Plaintiff did not have any restrictions. She advised that if Plaintiff could not do the job for which he was hired, then Plaintiff should be let go.

On February 26, 2003, Prebish sent an email to Hynes and Sunil Jain (Prebish's boss) stating,

> I believe that Sunil or yourself should investigate or have a meeting with Steve to determine if it is in HTS best interest to keep Steve Agnew. I do not have a job description to look at (I have requested one from Liz) however in discussion with Steve he told me that he would not sort material because of a known back problem and that he would not put himself in the position to hurt it. He did say that if it was work related HTS would be responsible . . . Steve is a real hard worker and wants to learn Material Control Position. Debbie believes he is real good and trainable. These qualities are hard to find but, I am not sure the risk to HTS is worth the gain to HTS.

Plaintiff was terminated the following day for not being able to perform his duties as hired.

On February 28, 2003, Prebish sent an email to Hynes and Jain informing them that Plaintiff had stated that HTS was making a mistake in firing him and that he was already talking to an attorney, who said that Plaintiff had a good case. Jain replied that he did not believe that Plaintiff had qualified for any sort of accommodations because Plaintiff had never informed Hynes or anyone else during hiring that he had a back problem or any other health condition.

On March 31, 2003, Plaintiff filed a claim with the Detroit branch of the EEOC, alleging that HTS had discriminated against him on the basis of his disability. The EEOC responded on July 16, 2003, informing Plaintiff that the EEOC was discontinuing its investigation because Plaintiff was not a qualified individual with a disability.

Plaintiff sought the care of a physician, Dr. Herbert Roth, on June 20, 2003. Plaintiff complained that he could only walk approximately half a mile before experiencing pain, and that Plaintiff's pain worsened with bending, standing, and lifting. Dr. Roth concluded that Plaintiff had disc degeneration and possible disc herniation. Dr. Roth recommended physical therapy, home exercise and back care.

Plaintiff attended physical therapy twice weekly for four weeks. Plaintiff's physical therapy reports indicate that Plaintiff improved to the point where his pain level was down to 1 out of a possible 10 (10 being highest); Plaintiff was able to walk a mile and half with no pain, was lifting up to 20 lbs. pain free, and could stand for two hours without symptoms.

Plaintiff next saw Dr. Roth on August 7, 2003, and the doctor's notes state that Plaintiff was feeling 75% better at the time of that visit. Dr. Roth did not recommend any more interventions at that time.

Plaintiff returned to Dr. Roth on April 1, 2004, indicating that he had been doing well until the prior month when his lower back pain again began increasing. Plaintiff complained that his symptoms worsened with bending, getting up from a sitting position, and towards the end of the day. Dr. Roth again diagnosed disc degenerative changes, again prescribed a course of physical therapy, and prescribed 800 mg of Motrin.

Plaintiff returned to Dr. Roth on May 13, 2004, this time indicating that physical therapy was not beneficial, so Dr. Roth recommended an MRI. Plaintiff's MRI report revealed disc degenerative changes, as Dr. Roth suspected. Dr. Roth did not recommend surgery, but did recommend a course of exercise and weight loss. Dr. Roth also suggested that Plaintiff should be careful with repetitive bending and lifting activities, as well as impact, loading and twisting.

During his deposition testimony, Dr. Roth stated that "bulging disc herniations often 'resolve spontaneously.'" (J.A. at 166) Dr. Roth also concluded that Plaintiff's symptoms had markedly improved as of Plaintiff's last visit, and that Plaintiff was having some back pain, but otherwise

doing well." Dr. Roth indicated that from his standpoint, Plaintiff may be limited with activities, but was not disabled.

On October 20, 2003, Plaintiff filed suit in the United States District Court for the Eastern District of Michigan against HTS, alleging that HTS violated his rights under the ADA. HTS filed a motion to dismiss the complaint on October 31, 2003, arguing that Plaintiff's claim was barred because Plaintiff is not a qualified individual with a disability. The district court dismissed the motion on November 30, 2003. Plaintiff then filed an amended complaint in March 2004, further alleging that he was "regarded as" having an impairment for the purposes of the ADA.

In July 2004, Defendant HTS filed a motion for summary judgment. The district court granted Defendant's motion on November 23, 2004, and dismissed Plaintiff's complaint with prejudice, finding that Plaintiff had failed to establish that he is a disabled person within the meaning of the ADA and that Plaintiff failed to make out a *prima facie* case of discriminatory discharge under the ADA.

Plaintiff filed this appeal on December 14, 2001.

II.

We review a district court's grant of summary judgment *de novo*. *Cotter v. Ajilon Services, Inc.*, 287 F.3d 593, 597 (6th Cir. 2002). Summary judgment is proper so long as the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998).

We agree with the district court that Plaintiff has not established that he is a disabled person for purposes of the ADA. The ADA states that:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. §12112(a). The ADA defines "discriminate," among other things as, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

For purposes of the ADA, the term "disability" means, "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102 (2)(A). Major life activities are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i).

The ADA regulations define "substantially limits" as:

> (1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The ADA further provides that the following factors should be considered in determining whether an individual is substantially limited in a major life activity: (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) permanent or long term impact of or resulting from the impairment. 29 C.F.R. 1630.2(j)(2).

According to the Supreme Court, "significantly limits" requires a showing of considerable limitation or one that limits a major life activity "to a large degree." *Sutton v. United Air Lines, Inc.*,

7

527 U.S. 471, 491 (1999). Temporary physical conditions, even those that may possibly recur, do not generally constitute substantial impairments. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 938 (6th Cir. 2000).

The evidence in the record does not establish that Plaintiff has a physical impairment that substantially limits a major life activity. Plaintiff's evidence shows that he likely does have a physical impairment, namely a bad back. However, Plaintiff's bad back alone does not qualify him for ADA disability status. Plaintiff has established that his back problems at times prevents him from lifting heavy objects, bending at the waist, twisting, standing for long periods of time or walking long distances, but Plaintiff has failed to establish that his back injury precludes him from performing these activities altogether or that he's significantly restricted in performing these activities. At best, Plaintiff has shown that he has an injury that at times limits his ability to perform major life activities such as walking or performing manual tasks, but Plaintiff has not shown that he is substantially limited in his ability to perform a major life activity. *See generally Sutton*, 527 U.S. at 491.

Moreover, Plaintiff has not established that his pain endures for a significant duration of time. In fact, with physical therapy and an exercise regime commenced the summer after Plaintiff was terminated from HTS, Plaintiff's symptoms improved to the point where he was able to walk a mile and a half, lift 20 lbs. with no pain, and stand for 2 hours with no symptoms.

Even more damaging for Plaintiff, his own physician stated that an injury of the type suffered by Plaintiff usually "spontaneously resolved." Dr. Roth also indicated that he did not consider Plaintiff disabled. Contrary to Plaintiff's contentions, the record establishes that the USMC doctors

also did not find that Plaintiff was disabled. Therefore, the district court properly determined that

Plaintiff does not have a physical impairment that substantially limits a major life activity.

III.

The evidence in the record also does not support Plaintiff's specific contention that he was

substantially limited in his ability to work. The ADA regulations state, "With respect to the major

life activity of *working* (emphasis in the original),

> The term *substantially limits* means significantly restricted in the ability to perform
> either a class of jobs or a broad range of jobs in various classes as compared to the
> average person having comparable training, skills and abilities. The inability to
> perform a single, particular job does not constitute a substantial limitation in the
> major life activity of working.

29 C.F.R. § 1630.2 (j)(3)(i). *See also Sutton*, 527 U.S. at 491-492 (stating that "when the major life

activity under consideration is that of working, the statutory phrase 'substantially limits' requires

at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs").

This Court has repeatedly held that the major life activity of working is not substantially

limited simply because an employee's physical or psychological impairment prevents him from

performing a particular job. *McKay v. Toyota Motor Mfg. U.S.A., Inc.*, 110 F.3d 369, 373 (6th Cir.

1997) (holding that plaintiff's carpal tunnel syndrome, which only prevented her from performing

a narrow range of assembly-line jobs, was not an impairment that substantially limited her general

ability to work); *Mahon v. Crowell*, 295 F.3d 585, 591-92 (6th Cir. 2002) (holding that plaintiff's

back problems did not substantially limit his ability to work in a broad class of jobs); *Black v.

Roadway Express, Inc.*, 297 F.3d 445, 454-55 (6th Cir. 2002) (finding that plaintiff's knee injury

did not prevent him from performing a broad class of truck driving jobs); and *Jasany v. United*

*States Postal Service*, 755 F.2d 1244, 1250 (6th Cir. 1985) (holding that plaintiff was not substantially limited in life activity of working where plaintiff's eye impairment, although a permanent one which prevented him from performing functions of a postal distribution clerk, did not interfere with his ability to work other jobs).

Similarly, Plaintiff's back injury that causes him some pain and discomfort when he has to sort parts does not substantially limit Plaintiff's ability to work in a broad class of jobs. In fact, the evidence establishes that Plaintiff in fact managed to sort the parts as required for several months, despite his back condition. Moreover, Plaintiff was able to perform all other functions of his job, including operating a forklift and the wheelabrator. Plaintiff performed a fairly broad range of tasks during his time at HTS, including the one that he was ultimately fired for not being able to perform.

Therefore, we conclude that Plaintiff has not produced sufficient evidence to create a genuine issue as to whether he has a disability that substantially limits his ability to perform the major life activity of working.

IV.

Finally, Plaintiff has also not established that Defendant HTS "regarded him" as having a physical impairment for purposes of the ADA. In fact, the record suggests that the opposite was true, that HTS did not regard Plaintiff as having a disability.

In order to establish that an employer regarded him as having a disability, a plaintiff must prove that a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or that an actual, nonlimiting impairment is limiting. *Sutton*, 527 U.S. at 489. "In both cases, it is necessary that a covered entity entertain

misperceptions about the individual--it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.*

Plaintiff has not proven that HTS entertained such misperceptions about him. Internal HTS emails indicate that the company did not consider Plaintiff as having a disability because Plaintiff indicated in writing that he could perform all the tasks of his job and Plaintiff passed the performance examination. Additionally Sunil Jain's email the day after Plaintiff's termination stated that he [Jain] did not believe that Plaintiff qualified for the ADA because Plaintiff neither told anyone at the time of hire that he had a back problem or asked for accommodations. This also belies Plaintiff's contention that HTS regarded him as having a disabling condition. Moreover, Plaintiff actually did sort parts and perform all other functions of his job as required.

Therefore, the district court did not err in finding that Plaintiff did not establish that he was "regarded as" having a disability.

V.

In conclusion, we agree with the district court that plaintiff has not established that he is a disabled person within the meaning of the ADA, and for the foregoing reasons, we **AFFIRM** the district court's summary judgment order.

11